IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Rita Grant Toney, ) | |
| ) | Civil Action No. 9:17-cv-00080 |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Nancy A. Berryhill, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The plaintiff, Rita Grant Toney ("Toney") brought this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"),[1] denying her claim for Disability Insurance Benefits ("DIB"). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a), D.S.C., this matter was referred to a magistrate judge for pretrial handling. Now before this court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court affirm the Commissioner's decision. (ECF No. 16).[2] In the Report, the magistrate judge sets forth the relevant facts and legal standards, which are incorporated herein by reference. Toney filed objections to the Report (ECF No. 17), and the Commissioner responded to those objections (ECF No. 19). Accordingly, this matter is now ripe for review.

---

[1] Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Fed. R. Civ. P. 25(d), Berryhill should be substituted for Carolyn W. Colvin as the defendant in this action.

[2] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

## BACKGROUND

On January 2, 2013, Toney applied for DIB, alleging a disability onset date of December 31, 2012. (ECF No. 10-5). These claims were denied both initially and on reconsideration by the Social Security Administration ("SSA"). (ECF No. 10-4). Toney then requested a hearing before an Administrative Law Judge ("ALJ"), and on July 24, 2015, the ALJ conducted a hearing on Toney's claims for DIB. (ECF No. 10-2). Toney waived her right to representation by counsel at the hearing. (ECF No. 10-4 at 45). On February 17, 2016, the ALJ issued an opinion finding that Toney was not disabled. (ECF No. 10-2 at 52-66).

In his decision, the ALJ found Toney met the insured status requirements under the Social Security Act through December 31, 2016, and that Toney had not engaged in substantial gainful activity since December 31, 2012, the alleged onset date of disability. (ECF No. 10-2 at 54). The ALJ further found that Toney suffered from the following severe impairments: spine disorder, dysfunction of the foot, and chronic obstructive pulmonary disorder (COPD). *Id.* Furthermore, the ALJ found that Toney suffered from the following non-severe impairments: obesity, affective disorder, anxiety, and substance addition. *Id.* Additionally, the ALJ found that Toney's alleged impairment of fibromyalgia did "not meet the requirements set forth by the Social Security Administration needed for the determination that fibromyalgia is a medically determinable impairment." *Id.* at 56. In reviewing all of Toney's impairments, the ALJ concluded that Toney did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* Additionally, the ALJ calculated Toney's residual functional capacity ("RFC") and determined that Toney could perform light work and that, therefore, Toney is "capable of performing past relevant work as a customer service clerk and a front desk clerk." (ECF No. 10-2

at 57 – 64). Alternatively, the ALJ found that even if Toney could not perform her past relevant work, there were "other jobs that existed in significant numbers in the national economy that [she] can perform." *Id.* at 65. Accordingly, the ALJ determined that Toney was not disabled as defined in the Social Security Act. *Id.* at 66. Toney subsequently appealed to the Appeals Council. With the aid of counsel, Toney sent additional evidence to the Appeals Council for review, including further medical evidence. *Id.* at 7. The Appeals Council made this additional evidence part of the record. *Id.* However, despite the new evidence, the Appeals Council denied Toney's request for review of the ALJ's decision. *Id.* at 2–7. Therefore, the ALJ's decision became the final decision of the Commissioner. This action followed.

## STANDARD OF REVIEW

The federal judiciary has a limited role in the administrative scheme established by the SSA. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Thus, in its review, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] own judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

However, "[f]rom this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d

3

278, 279 (4th Cir. 1969). Rather, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

## DISCUSSION

The magistrate judge filed a Report, recommending that the decision of the Commissioner be affirmed. (ECF No. 17). Toney stated the following specific objections to the Report: (1) that the magistrate judge erred in finding that the ALJ properly evaluated Toney's fibromyalgia claim; (2) that the magistrate judge erred in determining that even if the ALJ erred in evaluating the fibromyalgia claim that such error was harmless; and (3) that the magistrate judge erred in determining that the Appeals Council did not commit reversible error in denying review of the ALJ's decision based on newly submitted evidence. (ECF No. 17). The Commissioner replied to these objections and argued that Toney's objections were simply a reiteration of what was already before the magistrate judge. (ECF No. 19).

In determining that Toney did not have a medically determinable impairment of fibromyalgia, the ALJ stated that evidence of fibromyalgia in the record seemed to be "based on the claimant's reports of having been diagnosed" with the disease. (ECF No. 10-2 at 56). The ALJ stated that the record contained "no evidence showing that the claimant exhibits the symptoms associated with this impairment." *Id.* Additionally, the ALJ stated that Toney did not have the requisite number of tender points and that "there [was] no evidence that medical doctors have excluded other impairments as required in SSR 12-2p." *Id.*

The magistrate judge determined that the ALJ had properly evaluated Toney's claim of fibromyalgia. The magistrate judge correctly noted that a diagnosis of fibromyalgia is considered medically determinable if it meets either the 1990 American College of Rheumatology Criteria

4

for the Classification of Fibromyalgia, as set forth in II.A. of SSR-12p, or the 2010 American College of Rheumatology Preliminary Diagnostic Criteria, as set forth in II.B of SSR-12p. (ECF No. 16 at 14). However, the magistrate judge stated that because the ALJ "specifically found that there was no evidence that the medical doctors excluded other impairments," which is a component of both the 1990 and 2010 criteria, the ALJ did not err in determining that Toney did not have a medically determinable impairment of fibromyalgia. (ECF No. 16 at 15–16).

Toney now objects to the magistrate judge's assessment that the ALJ did not err in his evaluation of her claim of fibromyalgia. Specifically, Toney argues that while the magistrate judge was correct in stating that pursuant to SSR 12-2p, other impairments must be excluded before a diagnosis of fibromyalgia can be considered "medically determinable," the magistrate judge erred in assuming that Toney was relying on her positive ANA test as the evidence of such exclusion. *Id.* at 2. Instead, Toney argues that the positive ANA test result simply evidenced that Toney's "complaints of chronic pain" were not "based solely on [her] own reports." *Id.* The diagnosis of fibromyalgia, Toney argues, was already part of her diagnoses prior to the onset date of disability. *Id.* Accordingly, Toney states that the records before the ALJ simply described how Toney was being "treated for a history of fibromyalgia," but that her actual diagnosis dated back to 2001 or 2002. *Id.* Toney, therefore, argues that if the record was insufficient for the ALJ to determine whether or not Toney had a medically determinable impairment ("MDI") of fibromyalgia, then the ALJ should have followed the provisions of SSR 12-2p to correct the insufficiency. *Id.*

The undersigned agrees. While the ALJ and magistrate judge were correct that the record does not indicate that any of Toney's physicians excluded other potential diagnoses that might be

5

causing her symptoms,[3] it is unclear from the record whether such evidence is absent because the physicians neglected to exclude other diagnoses or whether such evidence is absent simply because the records showing such exclusions were from prior to the relevant period, and, therefore, were not requested. Toney specifically stated to the ALJ that she was diagnosed with fibromyalgia in 2001 or 2002. (ECF No. 10-2 at 93). Additionally, Toney told the ALJ that when she was first diagnosed with fibromyalgia, a rheumatologist in Spartanburg prescribed her "a lot of different medications," that she became dependent on, which led her to seek help from Spartanburg Treatment Associates' methadone clinic. *Id.* at 94. She specifically told the ALJ that she started taking methadone in 2005 after having "been on the different pain medications from Dr. Dorlon for about three or four years." *Id.* However, Toney claimed a date of disability onset of December 31, 2012, and the earliest medical evidence requested seems to be from 2012. (ECF No. 10-7). By that time, fibromyalgia was already an established diagnosis in Toney's medical history, (ECF No. 10-7 at 6 and 21), and Toney was simply being treated for, among other ailments, a previously diagnosed condition of fibromyalgia.[4] (ECF Nos. 10-7, 10-8). Therefore, it is entirely possible that Dr. Dorlon or one of Toney's other physicians ruled out other potential diagnoses, but that these records were not requested by the SSA because they were not contemporaneous with the alleged date of onset of disability.

SSR 12-2p provides that when a claimant files for benefits based on a claim of

---

[3] The record does show that Toney underwent multiple laboratory tests throughout the relevant period, including an antinuclear antibody (ANA) positive test, rheumatoid factor test, and a complete blood count. SSR 12-2p II.A.3. does list these procedures as laboratory tests that may be used to attempt to "rule out other disorders." However, the record does not reflect that any other potential diagnoses were excluded based on the results of these tests. In fact, based on the positive ANA test and a rheumatology exam, Toney was diagnosed with chronic myofascial pain. (ECF No. 8F).

[4] For instance, Dr. Slater, Toney's primary care physician, specifically stated in December 2013 that he wanted to prescribe Cymbalta for Toney's fibromyalgia and anxiety disorders. However, Toney stated that she could not afford the medication. At this point in time, fibromyalgia had already been listed in plaintiff's medical history for some time. (ECF No. 10-8 at 10).

fibromyalgia, the SSA "will generally request evidence for the 12 – month period before the date of application unless [it] has reason to believe [it] need[s] evidence from an earlier period." SSR 12-2 III.A.2. Additionally, where the record contains insufficient evidence for the adjudicator to determine whether the claimant has a medically determinable impairment of fibromyalgia, SSR 12-2p lists various possible ways to cure such insufficiency: (1) the ALJ may "recontact the person's treating or other source(s) to see if the information . . . is available"; (2) the ALJ may "ask for additional existing records"; (3) the ALJ may "ask the person or others for more information"; (4) the ALJ may or "purchase a consultative examination . . . to determine if the person has an MDI of [fibromyalgia]." SSR 12-2 III.B.

Here, the record is clear that Toney's diagnosis of fibromyalgia was preexisting by the time of the earliest of the records before the ALJ. In fact, Toney specifically told the ALJ that her diagnosis was from 2001 or 2002. Accordingly, "the ALJ should have reasonably inferred that earlier existing records might show that other potential diagnoses were excluded." *Pearson v. Comm'r of Soc. Sec. Admin.*, 1:16-2726-PMD-SVH, 2017 WL 1378197 slip op. at *17 (D.S.C. Mar. 29, 2017), *adopted by* 2017 WL 1364220 at *1 (D.S.C. April 13, 2017). However, despite this insufficiency, it does not appear that the ALJ attempted to obtain the records from Dr. Dorlan or any other physician that evaluated Toney in the period that was contemporaneous with her diagnosis of fibromyalgia to see if other diagnoses were excluded. There is also no evidence that the ALJ attempted to cure the insufficiency pursuant to any of the other possible methods in SSR 12-2p. Furthermore, Toney proceeded *pro se* at the hearing before the ALJ, and our circuit has held that in *pro se* cases, the ALJ has "a duty to assume a more active role in helping claimants develop the record." *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *see also Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996).

In his finding that Toney did not have a medically determinable impairment of fibromyalgia, the ALJ specifically stated that one of the reasons for this finding was that "there is no evidence that medical doctors have excluded other impairments as required in SSR 12-2p. (ECF No. 10-2 at 56). Because the record was insufficient to make such a finding outright and because the ALJ did not make an attempt to cure the insufficiency, the ALJ did not properly reject the diagnosis of fibromyalgia on this basis.

Because the magistrate judge agreed with the ALJ that Toney's physicians did not exclude other diagnoses and because such a finding was determinative under both the 1990 and 2010 tests, the magistrate judge did not address whether or not the ALJ erred in the remainder of his evaluation of Toney's fibromyalgia. However, the ALJ's statement that there is "no evidence" that Toney exhibited symptoms of fibromyalgia is incorrect. Throughout the record, there is evidence in the medical records of the following symptoms, which are symptoms commonly associated with fibromyalgia: muscle pain (ECF Nos. 10-7 at 40, 69; 10-8 at 6), fatigue (ECF No. 10-8 at 3, 16), thinking and remembering problems (ECF No. 10-8 at 16), depression (ECF No. 10-8 at 5, 8), anxiety (ECF Nos. 10-7 at 9, 12, 23, 25, 27, 38, 47; 10-8 at 5, 8), frequent urination (ECF No. 10-8 at 16), restless leg syndrome (ECF Nos. 10-7 at 6, 8, 9, 11, 34; 10-8 at 3, 5, 8, 11, 16), and numbness and tingling (ECF No. 10-7 at 11, 21, 38, 47, 51). *See* SSR 12-2p II.B. n.9 (listing common symptoms or signs that may be considered as contributing to fibromyalgia). However, while the undersigned notes that evidence of such symptoms is present in the record, this court makes no determination as to the credibility of that evidence and makes no fact-finding determination as to the validity of that evidence at this time. Nonetheless, because the ALJ's determination that Toney did not suffer from a medically determinable impairment of fibromyalgia was based in large part to the absence of symptoms in the record, the

ALJ did not properly reject the diagnosis of fibromyalgia on this basis.

Finally, the magistrate judge stated that even if the ALJ erred in finding Toney's fibromyalgia to be not medically determinable, this was harmless error. (ECF No. 16 at 19). Toney objected to this statement, arguing that because fibromyalgia was found not medically terminable instead of non-severe, the ALJ did not consider the impairment at later stages, including in assessing her residual functional capacity (RFC). (ECF No. 17 at 6). The undersigned agrees. It is well settled that if an ALJ accounts for all limitations in assessing the RFC then an error at an earlier stage in the process is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). In describing the RFC, the ALJ must consider all medically determinable impairments, even those that are not severe impairments. 20 C.F.R. § 404.1545(a)(2). However, "in assessing residual functional capacity, the Administration considers only medically determinable impairments." *Moore v. Berryhill*, No. CV 17-39330E, 2018 WL 2106470, at *2 (C.D. Cal. May 7, 2018) (emphasis in original); *see also Butler v. Colvin*, No. 1:15-cv-03162-TOR, 2016 WL 8232243, at * 5 (E.D. Wash. Aug. 23, 2016) (stating that "by classifying Plaintiff's fibromyalgia as a non-medically determinable impairment – rather than a severe or non-severe impairment – the ALJ excluded the effects of this condition when formulating Plaintiff's RFC"). As such, because the ALJ concluded that Toney did not have a medically determinable impairment of fibromyalgia, it would have been improper to consider it in the RFC calculation.

Accordingly, the error in evaluating Toney's fibromyalgia claim potentially impacted the subsequent steps of the disability determination process because it was not further considered. Specifically, the RFC determination may have changed had the ALJ considered Toney's symptoms. Additionally, a finding that Toney had a medically determinable impairment of

fibromyalgia may have altered the credibility analysis of Toney's testimony. *See e.g. Moore*, 2018 WL 2106470, at *2 ("If the ALJ had found Plaintiff's alleged fibromyalgia to be a medically determinable impairment, an impairment with which some of Plaintiff's allegedly disabling symptomology sometimes is associated, the ALJ may have viewed the credibility of Plaintiff's testimony in a new light."); *Strickland v. Berryhill*, No. 7:16-cv-252-FL, 2017 WL 3910436, at *6 (E.D.N.C. Aug. 21, 2017) (stating that "consideration of Claimant's fibromyalgia would likely impact the ALJ's credibility determination, because it could account for the increased severity of Claimant's pain and other symptoms"); *Allen v. Colvin*, No. 2:15-cv-01191-TSZ-DWC, 2016 WL 7368128, at *4 (W.D. Wash. Jan. 8, 2016) (noting that if the ALJ had considered a diagnosis of fibromyalgia, "the ALJ may have found Plaintiff's testimony regarding her pain, fatigue, and ability to function more credible, which may have impacted the RFC determination"). Accordingly, the court is unable to deem the ALJ's error in evaluating Toney's fibromyalgia to be harmless.

This court does not express any opinion as to the merits of Toney's claims. However, because of the ALJ's errors in evaluating Toney's alleged impairment of fibromyalgia, this court is unable to make a finding that substantial evidence supports the Commissioner's determination. As such, the court finds reversing the decision of the Commissioner and remanding the case to the ALJ for further review in light of this opinion to be appropriate.

## CONCLUSION

Having conducted the required *de novo* review of the issues to which Toney has objected, the court declines to adopt the Report (ECF No. 15) for the reasons stated herein. At this time, the court cannot determine that the Commissioner's findings were supported by substantial evidence or are without legal error. Accordingly, the Commissioner's final decision is

**REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative review as set forth herein.[5]

**IT IS SO ORDERED.**

s/Timothy M. Cain  
United States District Judge

Anderson, South Carolina  
August 28, 2018

---

[5] Because the court has determined remand to be appropriate for these reasons, the court declines to address Toney's other objections to the Report. The court notes that on remand, the ALJ will have the benefit of viewing all of the evidence that the Appeals Council made a part of the record, including the medical opinion of Dr. John Keith, which was the basis of Toney's other objection.